Barney, J.,
delivered the opinion of the court:
This is a suit to recover salvage on account of services rendered by the steam tug Meteor to the United States transport Rosecrans while aground on the Yukon flats in Bering Sea in June, 1900. The Rosecrans was on a voyage to certain ports in Alaska, and had on board government supplies and quite a large body of United States troops. She ran aground on the morning of June 15, 1900, somewhere in the vicinity of the mouth of the Yukon Biver and remained fast in the mud and sand for about three days before being rescued by the Meteor.
That the Meteor rendered valuable services is conceded by the Government, and the only question in the case is as to how much salvage should be awarded.
“ The relief of property from an impending peril of the sea by the voluntary exertions of those who are under no legal obligation to render assistance, and the consequent ulti *396 mate safety of the property, constitute a case of salvage.” (The Alphonso, 1 Curtis, 376; The Connemara, 108 U. S., 352.)
As to the amount of the award in salvage cases, the Supreme Court, in the case of The Blackwell (10 Wall., 1), said:
“ Courts of admiralty usually consider the following circumstances as the main ingredients in determining the amount of the reward to be decreed for a salvage service: (1) The labor expended by the salvors in rendering the salvage service. (2) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors in rendering, the service and the danger to which such property was exposed. (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued.
“ Compensation as salvage is not viewed by the admiralty courts merely as pay, on the principle of a quantum meruit, or as a remuneration pro opere et labore, but as a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others- to embark in such undertakings to save life and property.
“ Public policy encourages the hardy and adventurous mariner to engage in these laborious and sometimes dangerous enterprises, and with a view to withdraw from him every temptation to embezzlement and dishonesty the law allows him, in case he is successful, a liberal compensation.” (Id., 13-14.)
It appears from the findings that the Bosecrans ran aground in the Bering Sea and was fast in the mud and sand for three days. She had lightered a large part of her cargo in the effort to get afloat and had not succeeded in that effort. While, fortunately, during this time the weather was favorable and there was no high wind, it is beyond question and is admitted that if a high wind had arisen the vessel would have been in great danger of destruction, with the probable loss of many lives and all of the property on board. This danger was greatly accentuated by the immense floes of ice which covered a large part of the sea in the vicinity.
' It is undoubtedly true that the Meteor was exposed to no great danger in rendering this service, and this fact is taken into consideration in making up the amount of salvage. It *397 is also true, however, that the whole crew of the .Meteor worked gallantly for about twenty-five hours and this in a sea of immense ice floes, some of them coming down upon her from the windward and pounding her' sides. In fact, it can not be successfully denied that the whole situation was a critical one, and that gallant and valuable services were rendered by the crew of the Meteor which should be suitably rewarded. It is easy at this time and distance to say that the Roseomns would probably have succeeded in getting afloat in time without assistance. She had, however, been sticking in the mud in Arctic waters in the midst of floating ice for seventy-two hours, and we do not think it needs a seafaring-man to determine that this was a situation of peril, and that her rescuers are "entitled to much credit and a considerable salvage.
In estimating the amount of salvage to be allowed in a given case, the court must necessarily exercise its best discretion in the light of the rule above given. This rule is governed by a series of circumstances, all of which must be taken into consideration.
We have examinéd all of the cases upon this subject cited in the .briefs on both sides. They are instructive, but of necessity each case must largely be a law to itself.
The defendants’ motion for a new trial is allowed; the former findings of fact and conclusion of law are vacated and set aside, and new findings of fact and conclusion of law this day filed in lieu thereof awarding judgment in favor of the claimant in the sum of $12,000.